**Margaret E. DOOLIN and Claire Welt, Individually and as Co-executors of the Estate of Thomas J. Doolin, Deceased, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 422, Docket 90–6165.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1990.

Decided Nov. 1, 1990.

G. Kimball Williams, Albany, N.Y. (McNamee, Lochner, Titus & Williams, P.C., of counsel), for plaintiffs-appellants.

Howard M. Solomon, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Frederick J. Scullin, Jr., U.S. Atty., Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, Regina S. Moriarty, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for defendant-appellee.

Before FEINBERG, VAN GRAAFEILAND and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal raises the issue whether the United States government is entitled to a windfall of four years' interest, resulting from its own nondelivery of a tax refund check. Plaintiffs Margaret E. Doolin and Claire Welt, individually and as co-executors of the estate of Thomas J. Doolin, deceased, appeal from a judgment of the United States District Court for the Northern District of New York, Thomas J. McAvoy, J., dismissing their complaint against the United States government. Plaintiffs'

complaint sought, among other things, approximately $20,000 in interest from the Internal Revenue Service (IRS) allegedly owing on an overpayment of estate taxes on the decedent's estate. Judge McAvoy construed the applicable section of the Internal Revenue Code as barring the relief sought and granted the United States summary judgment in an opinion dated April 19, 1990 and reported at 737 F.Supp. 732. For reasons given below, we reverse and remand with directions.

## Background

The events leading to this lawsuit can be summarized briefly. Thomas J. Doolin died, testate, in California in October 1984. His sole surviving children are the plaintiffs in this case. In July 1985, attorney William S. Haase of a law firm in Albany, New York, who represented the family, mailed to the IRS an estimated estate tax payment of $50,000 along with an executed Form 4768, the form for an extension of time to file an estate tax return. The form indicated that all further communication about the estate should be sent to Mr. Haase. The government promptly cashed the check and thereafter had the use of the $50,000.

In January 1986, plaintiffs filed their Form 706, the estate tax return, with the IRS office in Fresno, California. The return showed that no tax was due on the estate, which was thus entitled to a refund of the $50,000. The IRS thereafter audited the return from its Albany, New York office. Nearly two years later, when plaintiffs received an Audit Report and an Estate Tax Closing letter, dated December 2 and December 14, 1988, respectively, they first learned that the IRS agreed that no tax was due. Shortly thereafter, Mr. Haase asked the IRS when a refund check would be sent. After several inquiries he was told that a check in the amount of $53,361.08 had been sent by ordinary mail in March 1986, nearly three years earlier. As will be seen below, that check was never received by plaintiffs.

There then ensued a series of frustrations for plaintiffs and their counsel as they attempted to obtain a refund check. After Mr. Haase explained to an IRS representative that the alleged 1986 check had never been delivered by the Postal Service, in January 1989 the IRS sent him Form 3911 ("Taxpayer's Statement Regarding Refund"). Plaintiffs promptly executed the form and mailed it back to the IRS Fresno office in accordance with instructions from the IRS. In the following six months, despite numerous phone calls and letters to the IRS, neither plaintiffs nor their counsel received either a refund check or any word as to what had happened to the alleged 1986 check or to the Form 3911.

Finally, in July 1989, taxpayers brought suit in the district court pursuant to 28 U.S.C. § 1346(a)(1), seeking the full amount of the refund and statutory interest. The litigation was turned over to another attorney in the law firm, G. Kimball Williams. Shortly thereafter, Eugene J. Rossi, an attorney representing the government, called Mr. Williams, who explained the situation in detail. Mr. Rossi stated that he would look into the matter and that he hoped to resolve the matter administratively. By letter dated August 17, 1989, the IRS finally responded to the Form 3911 filed in January 1989. The IRS response acknowledged receipt of that form seven months earlier, stated that the missing check "is being traced," apologized for the delay and promised that if the original check had not been cashed or destroyed, plaintiffs would receive a refund check within 90 days.

In September 1989, Mr. Rossi requested and received from Mr. Williams an extension of time for the government to answer the complaint that had been filed in the district court, and indicated his continued hope that the matter could be easily resolved. Two weeks later, Karen Holmes, district counsel for the IRS, called Mr. Williams and again stated that a check for $53,361.08 had been printed in March 1986.

Over the next two months, the attorneys for plaintiffs and for the IRS spoke a number of times and the government requested and received extensions of time to answer since plaintiffs' counsel was trying to resolve the matter amicably and was under

the impression that interest would be paid on the refund. According to Mr. Williams's affidavit, "Neither Mr. Rossi nor Ms. Holmes had ever said anything ... to the contrary concerning interest." In mid-October 1989, an assistant to Mr. Rossi told Mr. Williams that the IRS had discovered that the 1986 check had never been cashed and that the IRS had stopped payment on it. Early in November, Mr. Rossi stated that the IRS was going to send plaintiffs' counsel a replacement check with interest, after plaintiffs filed a "lost check" form and withdrew the suit. After three weeks went by, Mr. Williams called Mr. Rossi about the status of the matter. The latter said he would find out where the lost check form was.

Mr. Rossi called Mr. Williams on November 28, 1989 and for the first time raised the question of interest, stating that the IRS's position was that it need not pay any interest beyond the date of the alleged March 1986 check. Mr. Rossi also stated that the government would not even pay the money it concededly owed unless plaintiffs dropped the law suit, claiming that this was based on government policy. Negotiations thereafter became less friendly.

Mr. Williams refused to grant further extensions of time for the government to file its answer in the lawsuit, and the clerk of the district court noted the government's default on January 12, 1990. Shortly thereafter, plaintiffs moved for entry of a default judgment or for summary judgment. The government finally filed its answer later in January 1990, in which it admitted "that the plaintiffs are entitled to a refund of $53,361.08." (That sum included interest only up to March 1986.) Nevertheless, in its papers in opposition to plaintiffs' motion and in support of its own cross-motion for summary judgment, the government again stated, in effect, that it would not pay anything to plaintiffs unless the lawsuit was dropped.[1] However, on the return date of the motions in March 1990, the government delivered to plaintiffs a check for $53,361.08, apparently reversing the "policy" to which it had earlier referred.

This sequence of events left outstanding the issue of interest from March 1986 to March 1990. Plaintiffs argued to the district court that the government had the use of the estate's money for almost four years and should not be allowed this windfall. Accordingly, plaintiffs sought a judgment for the lost interest, which they estimate is $20,000. The government argued that no interest was due on the amount of refund beyond the date of issuance of the original refund check in March 1986. The district court agreed with the government and granted it summary judgment in its opinion dated April 19, 1990. This appeal followed.

## Discussion

■ The issue thus posed is whether plaintiffs are entitled to any interest for the period from March 1986 (when the government allegedly issued and tendered a refund check) to March 1990 (when the government replaced that check). The parties agree that in July 1985, plaintiffs overpaid the estate tax liability by $50,000, that the refund check given in March 1990 included $3,361.08 of interest due up to March 1986, and that the check allegedly issued and tendered in March 1986 was never cashed and has been stopped. Beyond that, there is sharp dispute.

The payment of interest on an overpayment of tax is governed by section 6611 of the Internal Revenue Code, 26 U.S.C. § 6611. That section provides, in relevant part:

> *Interest on overpayments.*
> (a) RATE.
>   Interest *shall* be allowed and paid upon *any* overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.
> (b) PERIOD.
>   Such interest *shall* be allowed and paid as follows ...
>   (2) REFUNDS.

---

1. The government's memorandum in the district court stated that the IRS office in Fresno, California "may not reissue a check if the amount of the refund check is the subject of litigation."

In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding *the date of the refund check* by not more than 30 days, *whether or not such refund check is accepted by the taxpayer after tender* of such check *to the taxpayer.* The *acceptance* of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.

26 U.S.C. § 6611 (emphasis added).

Appellants argue that under this statute the government is obligated to pay them interest to March 1990 (less the 30–day statutory period). The crux of their argument is that the March 1990 check is the only refund check ever tendered to them. The government replies that section 6611 must be strictly construed since it is a waiver of governmental immunity, and that this section does not provide for additional interest on a refund check that was properly tendered by the government but must be replaced through no fault of the government.

The government's reply assumes that there was an actual March 1986 check in existence, that it was a refund check properly tendered to plaintiffs and that the check had to be replaced through no fault of the government. The first assumption seems justifiable. The district court found that the government had established through documentary evidence that, in March 1986, a computer-generated refund check was directed to be issued and mailed to plaintiffs and machine-enclosed in a window envelope for direct delivery to the United States Post Office. 737 F.Supp. at 734–35. We do not believe that plaintiffs seriously dispute these findings of the district court.

■ We cannot agree, however, that the March 1986 check was properly tendered to plaintiffs under the statute and that no governmental fault created the need for its replacement. The government assumes that delivery of the check by government employees in the IRS to government employees in the Post Office necessarily amounted to a "tender" but, on the record before us, we do not see why that is so. The wording of section 6611 indicates that "tender" of a check means that a taxpayer has some knowledge of it and an opportunity to accept, or decline to accept, the check. Otherwise, the references in the section to the stopping of interest "whether or not such refund check is accepted" and to "acceptance" of the check "without prejudice" do not make sense; ordinarily, a taxpayer cannot "accept" something that he does not know is being proffered. Indeed, interpreting the statute in this way accords with the common legal meaning of "tender," which requires that the thing to be tendered is actually produced and proffered to the person entitled thereto. See, e.g., *Guy F. Atkinson Co. v. Commissioner of Internal Revenue*, 814 F.2d 1388, 1393 (9th Cir. 1987), cert. denied, 485 U.S. 970, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988); *Calder Race Course, Inc. v. Illinois Union Insur. Co.*, 714 F.Supp. 1183, 1188 (S.D.Fla.1989).

■ Citing such cases as *Dresser v. United States*, 180 F.2d 410 (10th Cir.1950), the government points out that it need take only "reasonable steps ... to effect delivery of the check." The government claims that it is entitled to a presumption of delivery when it deposits a check in the Post Office for transmission to a taxpayer, citing *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985). We do not question that proposition, although we note that the government concedes that the presumption does not work the other way, i.e., under 26 U.S.C. §§ 6601(a) and 7502, a taxpayer's payment to the government must actually be received by the IRS, not simply mailed to it, before interest on the tax payment due stops accruing. Under the government's interpretation of the statute involved here, the presumption of delivery to a taxpayer created by the IRS's delivery to the Post Office for mailing is irrebuttable. This cannot be so. Otherwise, even if the evidence showed that a postal employee deliberately destroyed the check after receiving it from the IRS for mailing, the government could still successfully claim that the check was delivered.

The presumption of government delivery of the 1986 tax refund check is not conclusive, cf. *Meckel*, 758 F.2d at 817, and was certainly rebutted here, where it is undisputed that the check was never cashed and was stopped. Indeed, as the district court noted, the government concedes that plaintiffs never received the check. 737 F.Supp. at 733.

Moreover, it is not at all the case that the government's fault did not make a replacement check necessary. Plaintiffs correctly filed Forms 4768 and 706, designating their attorney, Mr. Haase, as the person to receive correspondence and as the estate's representative. Nevertheless, the government admits that the alleged March 1986 check was addressed to:

Claire Welt Thomas J. Doolin Estate
% WS Haase P.O. Box 459
Albany, NY 12201

Since the check was allegedly sent in a window envelope, any Postal Service employee attempting to deliver the mail would be looking for a Claire Welt, Thomas J. Doolin Estate at P.O. Box 459. Only if that employee got past the first two addressees would the "%" reference to WS Haase be significant. It would have been easy enough to place the check in an envelope addressed to Mr. Haase rather than to Mr. Doolin's daughter and his estate, who would be utterly unknown to postal employees ordinarily delivering mail to the law firm representing plaintiffs. A window envelope for a check is fine if the payee/addressee resides or is in business at the designated address; in situations such as the present, the government's practice created needless confusion, which may explain the undelivered check.

In addition, the check was addressed to "%" Mr. Haase rather than "c/o" or "care of" Mr. Haase. The government asserts, without citation to authority, that "the symbol '%' used in the address is the commonly-recognized equivalent of 'c/o' (care of)." However, the government's own standard reference on such matters recognizes only "c/o" as the sign or symbol for "care of" and only "%" as the sign or symbol for "percent." U.S. Government Printing Office Style Manual, § 10.19 (rev. ed. 1984). On this record, we cannot agree with the government's assertion that the check had to be replaced through no fault of its own.

Under all the circumstances, we cannot agree that there was a proper tender of the March 1986 check to plaintiffs; that check was therefore not a "refund check" within the meaning of 26 U.S.C. § 6611(b)(2). Accordingly, the first check that was properly tendered was the March 1990 check, and plaintiffs are entitled to appropriate interest for the period between March 18, 1986 and a date within 30 days of March 9, 1990, the date of the "refund check."

The judgment of the district court is reversed and the case is remanded to the district court for entry of judgment in accordance with this opinion.