Dudley J. GODFREY, Jr. and Constance P. Godfrey, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–3061.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1993.

Decided June 28, 1993.

John Kirtley, Godfrey & Kahn, Milwaukee, WI (argued), for plaintiffs-appellants.

John E. Fryatt, U.S. Atty., Milwaukee, WI, Gary R. Allen, Ann Belanger Durney, S. Robert Lyons (argued), Dept. of Justice, Tax Div., Appellate Section, Tamera Fine–Trail, Dept. of Justice, Tax Div., Washington, DC, for defendant-appellee.

Before BAUER, Chief Judge, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Time is money. In the context of the interest a taxpayer loses while awaiting the issuance of a $279,323.00 tax refund check, four months equates to $6,580.20. Internal Revenue Code § 6611, 26 U.S.C. § 6611, recognizes this principle by providing that, in

limited circumstances, taxpayers shall receive interest on the money the government holds as a result of their overpayment of taxes. In this case in which the taxpayers overpaid their taxes and the government failed to prove it mailed an original refund check, section 6611 entitles the taxpayers to the interest which accrued while they awaited a replacement refund check.

On April 16, 1990, Dudley and Constance Godfrey filed their tax return for the year 1989, indicating their overpayment of taxes entitled them to a refund in the amount of $279,323.00.[1] The transcript of the Godfreys' taxpayer account kept by the Internal Revenue Service ("IRS") contains an entry on June 4, 1990, which reads "REFUND OF OVERPAYMENT." Two months later, the Godfreys submitted a Capital Taxpayer Statement Regarding Refund to the IRS, declaring that they had not received the refund check. The IRS contends the check was mailed; the Godfreys contend the check was never received. The check has not been cashed and its whereabouts are unknown. The IRS canceled this original refund check and issued a replacement check on August 9, 1990, which the Godfreys received on August 11, 1990.

The Godfreys subsequently filed an administrative claim with the IRS for the interest accruing on the $279,323.00 refund from the time they filed their original return, April 16, 1990, to when the second refund check was issued, August 9, 1990. In a letter dated March 15, 1991, the IRS denied the claim and offered the following explanation:

> We have disallowed the claim because interest is not allowed when reissuing a refund check unless (1) the non-receipt of the original check was the fault of any agency of the U.S. Government; or (2) the second check is not issued within 120 days of notification by the taxpayer claiming non-receipt of refund.

On September 9, 1991, the Godfreys filed suit in the district court. After the parties filed cross-motions for summary judgment, the district court ruled in the IRS's favor and denied the Godfreys the interest on their delayed refund check. This appeal followed.

Resolution of this dispute turns on the interpretation of section 6611, which provides in relevant part:

> *Interest on overpayments.*
> *(a) Rate.*
> Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.
> (b) *Period.*
> Such interest shall be allowed and paid as follows:
>
> . . . . .
>
> (2) *Refunds.* In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.
>
> * * * * * *
>
> (e) *Income tax refund within 45 days after return is filed.*
> If any overpayment of tax imposed by subtitle A is refunded within 45 days after the last date prescribed for filing the return of such tax . . . or, in the case the return is filed after such last date, is refunded within 45 days after the date the return is filed, no interest shall be allowed under subsection (a) on such overpayment.

26 U.S.C. § 6611.

In essence, section 6611(e) mandates that taxpayers receive interest on their overpayment of taxes if the overpayment is not refunded to the taxpayer within 45 days after it was made. Under section 6611(b)(2), a taxpayer is entitled to interest accruing from the date of payment to thirty days before the date of the refund check. By entitling the

---

1. The $279,323.00 refund was the result of their overpayment of taxes in the amount of $289,323.00 less $10,000.00 to be applied to their estimated tax for the following year.

taxpayer to the same amount of interest regardless of whether an issued refund check is accepted, the language of section 6611(b) contemplates that a refund check, the date of which has the effect of limiting the interest, will be tendered to the taxpayer by the IRS. Until a refund check is tendered, the interest continues to accrue. Once a refund check is tendered, the interest is fixed at the amount which has accrued at a date which precedes the date on the check by no more than thirty days. The thirty-day period allows the IRS to compute the interest due at a fixed point in time and then process the refund check without additional interest accruing before the taxpayer receives the check.

This case requires us to decide what conduct by the IRS constitutes a "tender" of a refund check to the taxpayer for purposes of computing the interest due under section 6611. The Godfreys contend that under section 6611, the concept of tender requires the taxpayer be afforded some opportunity to accept or reject the refund check. According to the Godfreys, when the government chose to transfer the check by mail, proper tender requires their receipt of the check, an event they assert never occurred. In the alternative, the Godfreys argue that even if mailing constitutes tender, the government has failed to prove that the original refund check was ever mailed. Consequently, under either of the Godfreys' positions, the replacement check was the first refund check tendered by the government, and section 6611 entitles them to interest accruing from the date of overpayment (April 16, 1990) until thirty days preceding the August 9, 1990 date of the replacement check (July 10, 1990). The Godfreys contend, without government objection, that the interest which accrued on the $279,323.00 refund during that time period equals $6,580.20.[2]

On the other hand, the government argues and the district court held that under section 6611, a refund check is tendered when it is mailed, and that a computer-generated transcript of the Godfreys' account indicates the IRS sent the Godfreys' original refund check

on June 4, 1990. Because it viewed the original refund check as properly tendered, the district court concluded that the Godfreys were not entitled to interest based on the replacement check, and thus granted the government's motion for summary judgment.

The most recent decision addressing this issue comes from the Second Circuit in *Doolin v. United States*, 918 F.2d 15 (2d Cir. 1990). In *Doolin*, the taxpayers sought to recover interest accruing over the four years between the issuance of an original refund check, which they never received, and the issuance of a replacement check. The government established that the original refund check was directed to be issued and machine-enclosed in a window envelope for direct delivery to the United States Post Office. In rejecting the government's argument that these actions necessarily constituted a tender of the refund check for purposes of section 6611, the court stated:

> The wording of section 6611 indicates that "tender" of a check means that a taxpayer has some knowledge of it and an opportunity to accept, or decline to accept, the check. Otherwise, the references in the section to the stopping of interest "whether or not such refund check is accepted" and to "acceptance" of the check "without prejudice" do not make sense; ordinarily, a taxpayer cannot "accept" something that he does not know is being proffered. Indeed, interpreting the statute in this way accords with the common legal meaning of "tender," which requires that the thing to be tendered is actually produced and proffered to the person entitled thereto.

*Id.* at 18.

We adopt the Second Circuit's reasoning and hold that the use of the word tender in section 6611 connotes that the taxpayer must be afforded an opportunity to accept or reject the refund check. When a taxpayer, for whatever reason, overpays his taxes, the government enjoys the use of the overpayment until a refund check is issued and cashed.

---

2. Internal Revenue Code section 6621, 26 U.S.C. § 6621, provides the rate at which interest accrues on overpayments for purposes of section 6611, and under 26 U.S.C. § 6622 the interest compounds daily. For the time period applicable to the Godfreys' overpayment, the rate was set at 10% per annum. Rev.Rul. 91–33, 1991–221 I.R.B. 1.

Section 6611 attempts to compensate the taxpayer for the time value of money which he transfers to the government through the overpayment. When the government tenders a refund check, it has attempted to relinquish control of the overpayment and the economic benefits which accompany that control. Whether or not the taxpayer accepts the tendered check, he has been afforded the opportunity to make a conscious decision whether to receive future benefits of possession of the overpayment, and consequently section 6611(b)(2) mandates that additional interest will not accrue. To make such a decision, the taxpayer must be afforded an opportunity to accept or reject the check. When the government transfers the check by mail, we hold that such an opportunity only occurs upon the delivery of the check to the taxpayer.

 At the same time, we recognize, as did the court in *Doolin*, that the government is entitled to a rebuttable presumption of delivery upon presentation of evidence of proper mailing. *Id.* *See also Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932); *McPartlin v. Commissioner*, 653 F.2d 1185, 1191 (7th Cir. 1981).[3] To invoke the presumption of delivery, the government could either present evidence of actual mailing such as an affidavit from the employee who mailed the check, or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed. *In re East Coast Brokers and Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir.1992); *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.1985) (applying New York law); *Capital Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669, 675 (S.D.N.Y.1991). *See also* 2 DAVID W. LOUISELL & CHRISTOPHER B. MUEL-

LER, FEDERAL EVIDENCE § 159 (2d ed. 1985) (discussing the admission at trial of evidence of mailing). The government chose the latter form and submitted to the district court a computer transcript of the Godfreys' taxpayer account which reflected they were entitled to a refund as a result of the overpayment. The government asserts that the transcript, when afforded a presumption of regularity, establishes that the IRS mailed the original refund check.[4]

We do not believe the district court could properly find that this transcript—standing alone—establishes that the original refund check was deposited in the United States mail. The transcript contains an entry on June 4, 1990 in the amount of $279,323.00, with a corresponding explanation of "REFUND OF OVERPAYMENT." Looking at the June 4, 1990 entry in isolation, we cannot tell whether the entry indicates that the IRS determined the taxpayers were owed a refund or that a refund check was actually prepared, enclosed in an envelope, and mailed. The transcript also contains similarly vague entries corresponding to the cancellation of the original refund check and the issuance of a replacement.

At oral argument, counsel for the government provided an explanation of IRS standard operating procedures and indicated where the June 4, 1990 entry fit into the process of issuing refund checks. We were then informed that, based on these procedures, the absence of a subsequent entry to the contrary indicated that the original refund check had been mailed on June 4. However, the government failed to submit to the district court an authoritative explanation of IRS procedures which could provide a presumption of regularity, thus allowing a reasonable inference the refund check was mailed.

---

**3.** Although we do not reach the issue in this case, even if the government produces evidence of mailing, the taxpayer may rebut the presumption of delivery through the presentation of other evidence demonstrating non-delivery. *See, e.g., Doolin*, 918 F.2d at 19 (presumption of delivery rebutted when government misleadingly addressed the check and conceded that the taxpayer never received the check); *McPartlin*, 653 F.2d at 1191 (absence of return receipt from certified mailing rebuts presumption of delivery).

**4.** In *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926), the Supreme Court recognized the presumption to which the government refers: "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

For example, the district court opinion in *Doolin* states that in that case, the government submitted documentary evidence, including declarations from the Acting Regional Director of the Financial Management Service of the United States Department of Treasury and the IRS Court Witness Program Supervisor, which detailed the procedures under which the IRS Regional Financial Center issues U.S. Treasury checks. *Doolin v. United States*, 737 F.Supp. 732, 734–35 (N.D.N.Y.1990). The district court concluded that such evidence established that "a computer-generated refund check (no. 52759975) was, on March 17, 1986, directed to be issued—to be mailed to [the taxpayers] at the Albany, New York address provided by them—and machine-enclosed in a window envelope on March 18, 1986 for direct delivery to the U.S. Post Office in the same building in which the computer-generated refund check was issued." *Id.* On appeal, the Second Circuit did not contradict this finding, but reversed the district court's conclusion that such conduct necessarily equated to the tender of a refund check for purposes of section 6611. *Doolin*, 918 F.2d at 18.

Here, the record contains absolutely no evidence regarding the operating procedures of the IRS or any other entity possibly involved in the mailing of refund checks. Apart from the certificate of authenticity which accompanied the transcript of the Godfreys' account, the only other information submitted by the government was a conclusory affidavit by the government's trial attorney stating that the June 4 entry showed the refund check was issued. This information does not establish the presumption of regularity which, in turn, permits an inference the refund check was mailed.

In support of its argument that the transcript, when afforded a presumption of regularity, demonstrates that the original refund check was mailed, the government cites two

cases involving the issue of whether the IRS sent notice of a tax assessment or notice of a tax deficiency to a taxpayer. *United States v. Chila*, 871 F.2d 1015 (11th Cir.1989); *United States v. Dixon*, 672 F.Supp. 503 (M.D.Ala.1987), *aff'd*, 849 F.2d 1478 (11th Cir.1988). In both cases, upon the government's submission of a Certificate of Assessments and Payments, which is a certified transcript of all the assessments, penalties, interest, and payments on record for the taxpayer, the court held that the notice had been mailed. *Chila*, 871 F.2d at 1019; *Dixon*, 672 F.Supp. at 506. When it contains an appropriate entry, we have held that this document constitutes evidence that an assessment was made in accordance with the law. *United States v. Miller*, 318 F.2d 637, 639 (7th Cir.1963). In addition to *Dixon* and *Chila*, at least one other court has extended the evidentiary value of such a Certificate to support a finding that the government mailed statutorily required notices. *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.1992). However, because these cases involve a different IRS document, the exact content of which the government has failed to present to this court, these decisions do not affect our conclusion that the Godfreys' computer transcript alone does not establish the mailing of the original refund check.[5]

To one familiar with IRS procedures, the transcript of the Godfreys' account may strongly indicate that a refund check was mailed. However, in the absence of any reliable submission to the court relating to the check mailing process or other proof such as an accompanying cover letter or records of IRS mailings, we conclude the government has failed to prove that the original refund check was ever mailed, and consequently it is not entitled to a presumption that the check was delivered.

Thus, we are left with the now uncontradicted affidavit from the Godfreys declaring

---

**5.** Furthermore, after reviewing the cases cited by the government, we note that a Certificate of Assessments and Payments apparently contains not only an entry that corresponds to the making of an assessment, but also lists "First Notice" dates for each assessment, giving rise to the inference that such notices were sent. *See Geiselman*, 961 F.2d at 6. The transcript at issue in

the case before us contains only a single entry relating to the original refund check. Unlike the entries referring to notices in a Certificate of Assessments and Payments, and without further explanation, this single entry does not support an inference that the original refund check was actually mailed.

that the first refund check they received was the replacement check dated August 6, 1990. Accepting that affidavit as true, there is no genuine issue of fact regarding the delivery of the original refund check—there was no delivery. Consequently, we hold that the replacement check was the only refund check tendered by the government, and section 6611 entitles the Godfreys to receive the $6,580.20 in interest which accrued on their overpayment from the time it was made until the date of that check, less the thirty-day statutory period.

Accordingly, the district court's decision to grant the government's motion for summary judgement is REVERSED, and the case is RE-MANDED for entry of summary judgment in favor of the Godfreys.