Angel KEEGAN, Plaintiff,

v.

BLOOMINGDALE'S, INC., and Federated Department Stores, Inc., Defendants.

No. 96 C 5065.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 23, 1998.

Robert Samuel Harlib, Chicago, IL, David H. Latham, Law Offices of David H. Latham, Chicago, IL, for Plaintiff.

John Joseph Lynch, Burke, Warren, Mac-Kay & Serritella, P.C., Chicago, IL, Patricia Costello Slovak, Richard John Mrizek, Brittain, Sledz, Morris & Slovak, Chicago, IL, Robert P. Joy, Allison B. Kaplan, Morgan, Brown & Joy, Boston, MA, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

This matter involves the requirements under the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.*, of employers and group health plan administrators to provide notice to individuals whose employment has ended of their right to continuing health care coverage. Angel Keegan ("Plaintiff") alleges in Count I that Bloomingdale's, Inc. ("Bloomingdale's"), her former employer, failed to notify Federated Department Stores, Inc. ("FDS"), the administrator of Bloomingdale's group health plan, that her employment had ended and that Bloomingdale's failed to extend to her the right of continuing coverage under its group health plan. In Count II, Plaintiff alleges that FDS failed to notify her of her right to continuing coverage under Bloomingdale's group health plan. Bloomingdale's and FDS ("Defendants") move for summary judgment on both counts. For the reasons set forth below, the Court grants Defendants' motion.

## I. BACKGROUND FACTS

Plaintiff was employed by Bloomingdale's in Chicago as the manager of the personal shopping service at the North Michigan Avenue store from November 1, 1993, through December 20, 1994. (Pl.'s Local Rule 12(n) Statement ("Pl.'s 12(n)") ¶ 1.) Plaintiff enrolled in the group health plan sponsored by Bloomingdale's and administered by FDS. (Pl.'s 12(n) ¶ 4.) As a result of Plaintiff's resignation on December 20, 1994, her coverage under the group health plan was scheduled to cease on December 31, 1994, unless she elected to continue coverage under COBRA. (Pl.'s 12(n) ¶ 6.)

FACS Group, Inc. ("FACS") is a division of FDS. (Pl.'s 12(n) ¶ 5.) FDS Benefits is the department of FACS that is responsible for administering all of the benefit programs offered by FDS. (Pl.'s 12(n) ¶ 5.) The COBRA Notification Unit is the department of FDS Benefits that is responsible for notifying all former employees of their right under COBRA to elect continuation coverage. (Pl.'s 12(n) ¶ 10.) The COBRA Notification Unit generates and mails 1,000 to 1,500 COBRA notification letters each month. (Pl.'s 12(n) ¶ 12.)

After receiving notice from Plaintiff, Bloomingdale's notified FDS Benefits of her resignation on three separate occasions. The day after receiving notice of Plaintiff's resignation, Rosemary Spano ("Spano"), Bloomingdale's Manager of Merchandise Recruitment for Stores other than New York, forwarded a completed Request for Termination—Executives form to FDS Benefits to notify it of Plaintiff's termination of employment. (Pl.'s 12(n) ¶ 8.) On January 3, 1995, Sheena Ashley ("Ashley"), Bloomingdale's Welfare Plan Administrator, completed and sent to FDS Benefits a Benefits Transmittal—Termination form that included Plaintiff's name to notify it of all Bloomingdale's employees whose employment had terminated in December 1994. (Pl.'s 12(n) ¶ 8; Ashley Aff. ¶¶ 6–7.) On January 4, 1995, Bloomingdale's sent to FDS Benefits via computer transmission a Compare Report containing all personnel changes for Bloomingdale's employees during December 1994 which included an entry for Plaintiff. (Pl.'s 12(n) ¶ 8.)

On January 9, 1995, Kathy Summerville ("Summerville"), a Benefits Coordinator for FDS Benefits entered into the FDS Benefits computer the information concerning Plaintiff's employment termination and generated a COBRA EFORM that was sent to the COBRA Notification Unit. (Pl.'s 12(n) ¶ 9.)

Data entry personnel in the COBRA Notification Unit entered the information in the COBRA EFORM into a separate computer that automatically generates a notification form letter with cost information for electing continuation coverage for that specific em-

ployee. (Pl.'s 12(n) ¶ 11.) A photocopy of each letter is retained as a file copy. (Pl.'s 12(n) ¶ 11.) The COBRA notification letter for Plaintiff was automatically generated on January 14, 1995.[1] (Pl.'s 12(n) ¶ 11.) FDS retained a photocopy of the letter generated for Plaintiff. (Mueller Aff. ¶ 5, Ex. A.)

The COBRA Notification Unit utilizes a standard procedure for mailing the notification letters. (Pl.'s 12(n) ¶ 12.) An employee folds and inserts each letter into a window envelope which has a return address. (Pl.'s 12(n) ¶ 12.) The sealed envelopes are delivered to the mail room in the same building. (Pl.'s 12(n) ¶ 12.) A postage meter is used to affix the proper postage. (Pl.'s 12(n) ¶ 12.) The mail is picked up by the United States Postal Service at approximately 4:00 p.m. daily. (Pl.'s 12(n) ¶ 12.)

Because FDS Benefits received no response from Plaintiff, the COBRA Notification Unit computer automatically generated a follow-up letter that was printed on March 21, 1995. (Pl.'s 12(n) ¶ 13–14.) A photocopy of the follow-up letter was retained as a file copy. (Pl.'s 12(n) ¶ 14; Mueller Aff. ¶ 5, Ex. B.) FDS Benefits follows the same procedures for mailing the follow-up letters as for the first notification letters. (Pl.'s 12(n) ¶ 14.)

The FDS COBRA Notification Unit computer records contained Plaintiff's home address as she had supplied it to Bloomingdale's when she started to work, and the letters generated on January 14 and March 21 printed that address.[2] (Pl.'s 12(n) ¶¶ 3, 17; Mueller Aff.Ex. A, B.) Plaintiff received her final paycheck and her W–2 form which were mailed to that same address. (Pl.'s 12(n) ¶ 16.) FDS maintains records to indicate that a notification letter has been returned as undeliverable. (Pl.'s 12(n) ¶ 15.) FDS has no records to indicate that either of the notification letters generated for Plaintiff were returned as undeliverable. (Pl.'s 12(n) ¶ 15.)

Plaintiff did not receive either the January 14 or the March 21 letter. (Pl.'s 12(n) ¶ 19; Defs.' 12(m) ¶ 19.) The only other resident at Plaintiff's home address was her husband. (Pl.'s 12(n) ¶ 17.) Plaintiff's cost of continuing her medical insurance coverage through Bloomingdale's would have been $148.22 per month until April 1, 1995, when she moved outside the coverage area. (Defs.' 12(m) ¶ 21.) After her medical insurance through Bloomingdale's expired, Plaintiff obtained medical insurance through CIGNA at $50.00 per week. (Defs.' 12(m) ¶ 22.) Plaintiff seeks damages as a result of not receiving a COBRA notice.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate the absence of a genuine issue of material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). While all inference from the record must be made in a light most favorable to the nonmoving party, this Court is not required to draw "every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## III. COBRA NOTIFICATION REQUIREMENTS

COBRA requires that when a qualifying event occurs employers give former employees the option to continue their health insurance coverage under the employer's plan at

---

1. Although January 14, 1995, was a Saturday, Defendants assert that at that time the computer system automatically printed letters on Saturdays and that the manager in charge of the computer system was present to monitor the printing. These letters were mailed on the following Monday. (Mueller Decl. ¶¶ 4–5.)

2. The Court notes that the address printed on the letters does not contain Plaintiff's apartment number, but Plaintiff has not raised this discrepancy as an issue, and she received other mail addressed without the apartment number.

the former employee's expense. 29 U.S.C. § 1161 (1997). Qualifying events include termination of employment for any reason other than gross misconduct. 29 U.S.C. § 1163. COBRA requires that the employer notify the plan administrator of the qualifying event within thirty days. 29 U.S.C. § 1166(a). The plan administrator is responsible for notifying former employees of their right to receive continuation coverage within fourteen days after it receives notice of the qualifying event. 29 U.S.C. § 1166(a), (c).

## IV. COUNT I—NOTICE TO THE PLAN ADMINISTRATOR

Under COBRA, Bloomingdale's was required to notify FDS of Plaintiff's termination of employment within thirty days. 29 U.S.C. § 1166(a). There exists no issue of material fact concerning whether Bloomingdale's properly notified FDS that Plaintiff's employment had ended on December 20, 1994. Plaintiff admits that Bloomingdale's sent notice to FDS on three separate occasions within the statutorily mandated thirty days of Plaintiff's termination date: first, in the Request for Termination—Executives form, sent shortly after December 20, 1994; second, in the Benefits Transmittal—Termination form, sent on January 3, 1995; and finally in a computer transmission of the Compare Report on January 4, 1995. The Court finds that Bloomingdale's complied with their statutory duty to notify the plan administrator of Plaintiff's qualifying event, and therefore Bloomingdale's is entitled to summary judgment on Count I.

## V. COUNT II—NOTICE TO THE FORMER EMPLOYEE

COBRA requires the plan administrator to notify the former employee of her right to receive continuation coverage but does not specify the manner in which notice must be given. 29 U.S.C. § 1166(a). The statute provides:

(a) In general

In accordance with regulations prescribed by the Secretary—

. . .

(4) the administrator shall notify—

(A) in the case of a qualifying event described in paragraph (1), (2) [termination of employment], (4), or (6) of section 1163 of this title, any qualified beneficiary with respect to such event,

. . .

of such beneficiary's rights under this subsection.

. . .

(c) Rules relating to notification of qualified beneficiaries by plan administrator

For purposes of subsection (a)(4) of this section, any notification shall be made within 14 days (or, in the case of a group health plan which is a multiemployer plan, such longer period of time as may be provided in the terms of the plan) of the date on which the administrator is notified under paragraph (2) or (3), whichever is applicable, . . . .

### A. Good Faith Standard

Although neither the Supreme Court nor the Seventh Circuit has addressed the issue, several other federal courts have held that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient" to satisfy COBRA requirements. *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir.1997) (internal quotations omitted) (collecting cases). Thus, the issue is not whether the former employee actually received notice; the issue is whether the plan administrator "caused the notice to be sent in a good faith manner reasonably calculated" to reach the former employee. *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333–34 (D.Utah 1992); *see also Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 783 (S.D.Miss.1992) (sharing the "view of the *Jachim* court that § 1166 does not require proof that the notices required by that section be received" and limiting its "consideration of the proof solely to the question of whether there is a genuine issue of material fact concerning [the defendant's] assertion that the notice was mailed."), *aff'd,* 42 F.3d 642 (5th Cir.1994); *Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 236 (W.D.Tex. 1996) (agreeing with the *Jachim* court that § 1166 does not require proof that the notices be received), *aff'd,* 96 F.3d 1445 (5th

Cir.1996); *Conery v. Bath Associates,* 803 F.Supp. 1388, 1398 (N.D.Ind.1992) (same). This Court agrees that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient to satisfy COBRA requirements and that proof of receipt is not required.

## B. Notification Methods that Satisfy the Good Faith Standard

■ Notification methods that are reasonably calculated to reach the former employee satisfy the standard of good faith compliance with the statute. *Lawrence,* 837 F.Supp. at 782. Notice by first class mail addressed to the former employee's last known address, the method selected in the present case, is an acceptable method of notification. *Jachim,* 783 F.Supp. at 1334.

## C. Proof Sufficient to Satisfy the Standard of Good Faith Compliance

■ The plan administrator bears the burden of proving that adequate notice of COBRA rights was provided to the former employee. *Smith,* 128 F.3d at 1383. In the present case, Defendants argue that their affidavits from several employees explaining in detail the standard office procedures for generating and mailing COBRA notifications, their paper trail for Plaintiff's letter up to the point of printing, and a copy of the letter is sufficient to show a good faith compliance with the statutory requirements. Plaintiff argues that Defendants' proof is insufficient to satisfy the standard of good faith compliance with the statute and that Defendant must prove that Plaintiff's notice was actually mailed. (Pl.'s Brief at 6.) Defendant has produced no testimony by any individual that proves that Plaintiff's notice was actually mailed after it was printed.

Almost every court encountering the issue of compliance with the COBRA statutory notice requirements must determine what constitutes an adequate showing that the plan administrator made a good faith effort to comply. For the present summary judgment motion, this Court must determine whether as a matter of law Defendants have produced sufficient proof that the good faith standard was satisfied.

The Court looks first to *Godfrey v. United States,* 997 F.2d 335 (7th Cir.1993). To resolve the issue of whether a tax refund check was properly tendered, the court had to determine whether the Internal Revenue Service ("IRS") demonstrated that it had mailed the check. *Id.* at 337–38. To establish that the check was mailed, the government "could either present evidence of actual mailing such as an affidavit from the employee who mailed the check, or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed." *Id.* at 338. The court found that the government failed to prove that the refund check was mailed because it did not submit any records of mailings or evidence regarding the operating procedures of the IRS. *Id.* at 339. The Seventh Circuit reversed the district court's grant of summary judgment to the government and entered summary judgment in favor of the plaintiff. *Id.* at 340. Although the case before this Court presents a different situation, *Godfrey* is applicable because it instructs that "proof of procedures followed in the regular course of operations," giving rise to a strong inference that a document was properly addressed and mailed, is sufficient to establish that the document was mailed.

Several courts deciding the COBRA notification issue now before this Court have found that testimony regarding standard operating procedures and evidence that the procedures were consistently followed were sufficient to satisfy the good faith standard. In *Jachim,* the court found as a matter of law that the defendant had satisfied its statutory obligation by sending timely notice of COBRA rights via first class mail to the defendant's last known address. 783 F.Supp. at 1334. An employee of the defendant testified that in accordance with regular office procedures she prepared, addressed, and placed in the mail bin a COBRA notice for the plaintiff. *Id.* at 1333. Letters in the mail bin were regularly retrieved, metered, and delivered to the post office. *Id.* The Plaintiff testified that he did not receive any notice of his COBRA rights. *Id.* The court found that the defendant's evidence tended

to show that the plan administrator mailed the notice and that the plaintiff failed to offer any evidence refuting the defendant's testimony that the standard procedures were followed in the plaintiff's case. *Id.* at 1334. The plaintiff offered no evidence that his letter was not retrieved from the mail bin and delivered to the post office.

In *Roberts v. National Health Corp.*, 963 F.Supp. 512, 515 (D.S.C.1997), the court granted the defendant's summary judgment motion because the defendant met its burden of proving that it complied with COBRA provisions. The defendant presented evidence concerning its established procedure for automatically sending notice letters using its computer system. *Id.* at 514–15. Although the defendant could not produce a copy of the actual letter sent to the plaintiff, it produced a COBRA report that was stamped with the date the plaintiff's notice was mailed. *Id.* at 515. The court found that this report demonstrated that the standard procedures were followed for the plaintiff's letter. *Id.* The plaintiff did not refute the defendant's evidence, but argued that she did not receive the notice. *Id.* The court found this evidence insufficient. *Id.*

Plaintiff compares Defendants' evidence with that found in several cases where the court determined that the defendant's proof of compliance was insufficient. Plaintiff first points to *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723 (8th Cir.1995), in which the Eighth Circuit affirmed the district court's finding for the plaintiff after a bench trial. (Pl.'s Brief at 6.) The defendant offered testimony that the COBRA notification was hand delivered to the plaintiff, but the plaintiff denied receipt. *Stanton*, 52 F.3d at 729. The district court found that the evidence was in equipoise and thus resolved the issue against the party bearing the burden of proof. *Id. Stanton* is not instructive for the present case because the method of notification here is mailing, not hand delivery. *Stanton* does not address the issue of what proof is required as a matter of law to show good faith compliance with the statute where the notifications were mailed.

Plaintiff argues that in *Lawrence* the court rejected direct testimony from the defendant's employee that the COBRA notice was mailed and denied summary judgment to the defendant. (Pl.'s Brief at 6.) However, the employee in that case could not remember any details about mailing the notice, and the defendant did not produce any evidence regarding standard mailing procedures. *Lawrence*, 837 F.Supp. at 783. In contrast, Defendants in the instant case have supplied several affidavits describing the standard offices procedures for generating and mailing COBRA notices.

In *Conery*, a case Plaintiff argues is strikingly similar to the case at bar, the court denied summary judgment where the defendant's employee testified that she mailed the COBRA notification and produced a copy, and the plaintiff denied that he had received notification. 803 F.Supp. at 1398–99. The important difference is that in *Conery* the plaintiff was the moving party; thus, inferences were drawn in favor of the defendant employer. 803 F.Supp. at 1398. The testimony concerning mailing and the copy of the letter together created a question of fact as to whether the notice was mailed. *Id.* at 1398–99. In the present case, although inferences are drawn in favor of Plaintiff, she has produced no evidence tending to show that the notice was not mailed and therefore has not created any issue of material fact.

Finally, Plaintiff directs the Court to *Phillips v. Riverside, Inc.*, 796 F.Supp. 403 (E.D.Ark.1992). (Pl.'s Brief at 6–7.) The *Phillips* court agreed with the general proposition that COBRA requires only a good faith effort to give notice, but found that "it cannot be said that such an effort was made if there is no evidence that the COBRA letter was actually mailed." 796 F.Supp. at 408. The court denied summary judgment to the defendant because "the testimony about office procedures and the consistency with which they were followed was too indefinite to demonstrate good faith compliance with COBRA notice requirements." *Id.*

Consistent with the approaches taken in these cases, this Court holds that unrefuted evidence by a plan administrator concerning adequate standard office procedures for generating and mailing COBRA notices along with unrefuted evidence show-

ing that the procedures were consistently followed in a given individual's case is sufficient, as a matter of law, to prove that the administrator satisfies the standard of good faith compliance with COBRA notification requirements. The Court finds that Defendants' evidence in the instant case is sufficient to demonstrate a good faith compliance with the statute. Unlike the evidence in *Phillips*, Defendant offers definite testimony concerning the standard procedures that were followed for generating all notices. As an indication that the procedures were followed for Plaintiff, Defendants' produced a copy of the letter that was generated for Plaintiff. Although the paper trail at FDS ended with the printing of the notices, Defendants offered testimony explaining the routine mailing procedures, and it is unlikely that on two separate occasions Plaintiff's letter was not mailed with the rest of the batch for that day. Further, Mueller stated that she was unaware of any instance in her four year tenure in which a COBRA letter was generated but did not get mailed. (Pl.'s 12(n) ¶ 12; Mueller Decl. ¶ 7.) Plaintiff provided no evidence that the standard procedure was not followed for her notice.

## VI. CONCLUSION

Because the Court finds that Bloomingdale's and FDS both fulfilled their statutory duties of notification under COBRA, **the Court grants summary judgment in favor of Bloomingdale's, Inc., on Count I and in favor of Federated Department Stores, Inc., on Count II.**