**Mason E. and Carole M. HESS, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CS–91–001–RJM.**

United States District Court, E.D. Washington.

Dec. 10, 1991.

---

Mason E. Hess, pro se.

Robert P. Brouillard, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., and Carroll D. Gray, Asst. U.S. Atty., Spokane, Wash., for defendant.

## ORDER

ROBERT J. McNICHOLS, Senior District Judge.

Currently pending are cross-motions for summary judgment. Perhaps a rarity in refund actions, there are no jurisdictional issues. The motions have been fully briefed and were considered without oral argument on December 9, 1991.

Plaintiffs submitted a Form 1040 together with attachments for calendar year 1983 on or about April 7, 1984. Most lines bore no entry. Every one which did showed a "–0–" except for line 36 (exemptions), line 57 (tax withheld) and lines 64–66 (refund due). The attachments reflected $493 in rental income (Schedule E) and $15,667 in itemized deductions (Schedule A). Neither figure was carried over to the Form 1040. IRS later determined that plaintiffs' gross income for the year was $56,645.

■ On or about April 1, 1985 plaintiffs submitted a Form 1040 together with attachments for the preceding year. Every line which bore an entry reflected a "–0–" save for line 18 (rental income), line 23 (total income), line 26a (IRA deduction), line 36 (exemptions), line 57 (tax withheld) and lines 64–66 (refund due). The line for gross income was marked "Fifth Amendment." IRS later determined that gross income for the year was $64,086. On June 21, 1988 a notice of deficiency was issued as to both tax years.[1] The threshold question is whether the notice was timely.

Significantly, plaintiffs do not dispute the government's gross income figures, although there is an issue over the propriety of certain disallowed deductions which will be addressed further. The concession is significant because the three-year statute of limitations which normally governs the timeliness of a deficiency notice is doubled to six years when more than 25% of gross income is unreported. 26 U.S.C. § 6501(e)(1)(A). Clearly, the 25% rule has been triggered. The notice was timely.

■ While the question of whether the returns were really returns within the meaning of the tax code is irrelevant to a determination of whether the deficiency notice was timely, the issue must be resolved to ascertain whether penalties imposed pursuant to 26 U.S.C. § 6651(a)(1) were appropriate. This Circuit has long embraced a bright-line test. If a purported return contains financial data, even untrue financial data, which would allow for a computation of tax, the document is a return. *United*

---

1. Separate notices were sent to each plaintiff, a      feature which is not material to the outcome.

*States v. Long,* 618 F.2d 74 (9th Cir.1980). This is so because even a series of "–0–" entries will allow for computation of tax. *Id.* at 75–76. The return may be frivolous. It may be false. It may be fraudulent. But it is a return nonetheless. *United States v. Kimball,* 925 F.2d 356, 358 (9th Cir.1991) (en banc) (re-affirming *Long's* distinction between computational and non-computational information). *Kimball* recognized that the *Long* result was "formalistic," but felt constrained to apply a clear-cut test in the interest of promoting predictability. *Id.* The test is not unduly prejudicial to the United States. IRS, after all, is not powerless to deal with false, frivolous and fraudulent returns. *Long, supra,* 618 F.2d at 76 n. 4.

■ With *Long* controlling, whether the 1983 return qualifies as a return is a close question. One distinguishing feature is that in *Long,* the taxpayer completed all critical lines with "–0–" entries, including exemptions, income, tax, and tax withheld. *Id.* at 75. Here, on the other hand, the taxpayers did not short themselves. They had paid $5,322 in withholding and they wanted it back. The obvious question which leaps out at the reader of the subject return is "withholding from what?" Earned income is shown as "–0–." Interest income is also "–0–." There are no entries for dividends, capital gains, business income, or any other source of income from which taxes might have been withheld. The only logical conclusion which flows from these observations is that plaintiffs had some source of taxable income subject to withholding, but were not going to apprise IRS of what that source was or its amount. So viewed, the face of the return affirmatively shows that it contains insufficient "information from which tax liability could be calculated." *Id.* at 75. The § 6651(a)(1) penalty was warranted.

■ Nor is the 1984 return a return, not only for the reasons stated above, but because of an even more concrete flaw. The converse teaching of *Long* and progeny is that a return which fails to provide financial data, or provides data which renders tax computation impossible, is not a return. By asserting the Fifth Amendment, plaintiffs effectively presented such data, albeit no doubt unintentionally. They obviously received some earned income. That much is known because plaintiffs took an IRA deduction and such a deduction can only be premised on earned income. 26 U.S.C. §§ 219(b) & (f)(1). Thus, with line 7 (earned income) left blank, and line 23 marked "Fifth Amendment," the return shows on its face that material financial data was omitted. The 1984 return is therefore not a return and the § 6651(a)(1) penalty was appropriate.

■ Finally, plaintiffs urge a rather ingenious argument that a return is much more than the Form 1040 together with schedules filed by the taxpayer. Rather, a return also consists of all information provided by others "on behalf of, or with respect to" the taxpayer. 26 U.S.C. § 6103(b)(1). Ergo, a W–2 or a 1099 or similar information returns made by employers, banks and the like all become part of the return. Such information returns were submitted to IRS on behalf of plaintiffs. That is how IRS was eventually able to calculate their correct tax liability. So viewed, the 1983 and 1984 returns were complete in the sense that the material submitted by plaintiffs and the information returns submitted by others on their behalf together add up to a complete picture whereby the tax could be determined.

While creative, this catch-me-if-you-can position has yet to be adopted by any court, and with good reason. Section 6103 does not impose any duty on the taxpayer. On the contrary, it imposes a duty of confidentiality on IRS. That is why the definition of "return" contained in § 6103 is limited by the prefatory language that it governs "for purposes of *this section.*" There is no reason to believe that it also governs what constitutes a return for purposes of § 6651. Were plaintiffs correct, no one would ever be required to file a return at all so long as employers and banks submitted information returns on the taxpayer's behalf.

The § 6653 penalties need not detain us long. When a taxpayer has $60,000 in gross income and tells the IRS that he has

none (1983) or virtually none (1984), the taxpayer faces a stout burden in showing a lack of negligence. *Norgaard v. C.I.R.*, 939 F.2d 874, 877 (9th Cir.1991) and authorities cited therein. Plaintiffs have advanced no facts in support of that burden.

Plaintiffs urge, however, that even if the penalties were warranted, they were miscalculated. The argument is that "underpayment," as the term is used in § 6653(c)(1), is determined by taking the true tax liability and subtracting therefrom both what the taxpayer conceded on his return was owed and "amounts previously assessed (or collected without assessment) as a deficiency." § 6211(a)(1)(B). The sums withheld were "collected without assessment." Ergo, withholding should be factored into the equation. The government counters that the qualifying language "as a deficiency" cannot be read out of the statute. Employers are required to withhold regardless of whether a deficiency exists. Thus, withholding does not satisfy the plain requirements of the statute.

The Court agrees that 26 U.S.C. § 6211 tends toward circuity, defining as it does, "deficiency" with the term "deficiency." At the same time, the activity contemplated by the statute is not so difficult to comprehend. Illustrative is *Bendheim v. C.I.R.*, 214 F.2d 26 (2nd Cir.1954). In *Bendheim*, the taxpayer filed a return reflecting no tax liability. The return was audited and IRS asserted a deficiency. No assessment was made, but the agency threatened that one would be if the taxpayer did not pony up. He did, and such payment was deemed "collected without assessment." *Id.* at 28. Withholding may well be "collected without assessment," but it is not in respect of a deficiency.

When in doubt, it never hurts to adopt a purpose-oriented approach in interpreting the tax code. *Conforte v. C.I.R.*, 692 F.2d 587, 592 (9th Cir.1982). Section 6653(a) was enacted for the purpose of "discouraging negligent return preparation." *Id.* Under plaintiffs' theory, it would make absolutely no difference whether a taxpayer conceded tax liability or not. If he did, the underpayment would be reduced by the amount of the concession. § 6211(a)(1)(A). If he did not, the underpayment would be reduced by the amount of the withholding. § 6211(a)(1)(B). There would be no downside risk for a taxpayer to do what was done here and concede no liability. If Congress intended to discourage negligent return preparation, this would certainly be a counterproductive manner of doing so. IRS did not err in refusing to credit plaintiffs' underpayments by the amounts withheld.

With regard to the Universal Life Church "contributions," no one could reasonably believe such a scheme lawful. Stated in its simplest terms, the mechanics were that church members, many of whom were ordained ministers, would make a "contribution" and at the same time direct the Church to pay bills incurred by the "contributor." *See generally, Svedahl v. Commissioner*, 89 T.C. 245 (1989). Plaintiffs' home was their "parsonage." ULC paid bills incurred by the parsonage for electricity, water, garbage collection, insurance and telephone. It is difficult to imagine a more transparently frivolous tax avoidance device or one more patently designed to skirt the "inurement" prohibition of 26 U.S.C. § 170(c)(2)(C). See *Universal Life Church, Inc. v. United States*, 9 Cl.Ct. 614, 617 n. 2 (1986) (arraying authorities).

Plaintiffs urge, however, that contributions made prior to September of 1984 when IRS removed ULC from the list of approved tax exempt organizations were presumptively deductible, and indeed were "automatically" deductible. That is not how the real world works. Suppose the following hypothetical. Father O'Ryan presides over the local Catholic parish. The Catholic Church is an approved exempt organization. Contributions are automatically deductible, assuming that a bona fide contribution has been made. Father O'Ryan delivers an impassioned plea for the foreign missions which is well received by the congregation when the collection plate is passed. One parishioner is so overcome by the good father's eloquence that he seeks out the priest after services to make a rather special pledge. He will aid

the work of the Lord in providing bodily and spiritual sustenance to his less fortunate brethren by contributing 50% of his income. He will give the 50%. He will obtain a receipt for that 50%. But he wants 40% kicked back under the table. The fact that a mainstream church is involved will not save the day if IRS gets wind of these shenanigans. So it is here. That ULC was at one time a recognized exempt organization does not preclude IRS from piercing the substance of a given transaction any more than the government would be precluded from prosecuting Father O'Ryan and his generous parishioner for fraud.

There is no basis in the record whereby the Court could conclude that plaintiffs have met their burden of showing that legitimate contributions were made to ULC, or even assuming that some money may have been left on the table, what the amount of those unreimbursed contributions might be. *Smith v. C.I.R.*, 800 F.2d 930, 933 (9th Cir.1986).

THEREFORE IT IS ORDERED that:

(1) Plaintiffs' motion for summary judgment is DENIED.

(2) Defendant's motion for summary judgment is GRANTED and the action is DISMISSED.

(3) The Clerk shall enter judgment accordingly.