**In re John Howard PAYNE, Debtor.**

**John Howard Payne, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 97 B 39766.
Adversary No. 01 A 00342.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 3, 2002.

720

S. Ira Miller, Chicago, IL, for Plaintiff.

Mayer Y. Silber, Office of Chief Counsel, IRS, Chicago, IL, Mandee Rosler Rosenberg, U.S. Department of Justice, Tax Division, for Defendant.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER,
Bankruptcy Judge.

*Background/History*

John Howard Payne ("Plaintiff or Payne") is seeking a declaration that his liability for 1986 taxes due to the United States was discharged through his bankruptcy filing under Chapter 7. Payne filed his Petition on December 31, 1997. The United States Internal Revenue Service ("IRS or USA") was a scheduled creditor for unpaid taxes for the years 1983 through 1991. Payne received a general discharge on April 17, 1998, and his case was closed that same month. However, he was granted leave to reopen his case on April 3, 2001, after the U.S. Internal Reve-

nue Service notified him of its intent to levy on certain assets to collect the 1986 income tax. Payne then filed the instant adversary to determine dischargeability of the alleged tax debt. The USA responded by moving for summary judgment under § 523(a)(1)(B)(i) of the Bankruptcy Code, which excepts from discharge any tax for which the required return was not filed. For reasons discussed below, the motion for summary judgment is denied.

### JURISDICTION

Jurisdiction over this matter lies pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding under § 157(b)(2)(i). This matter is referred here under the standing referral of District Court Internal Operating Procedure 15(a). Venue is proper in this district under 28 U.S.C. § 1409(a).

### DISCUSSION

*Standards for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy by Fed.R.Bankr.P. 7056(c), provides that a motion for summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding whether there is a triable dispute, the court must construe all reasonable inferences that can be drawn from the facts in favor of the nonmoving party. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986).

*Undisputed Facts*

Payne did not controvert the list of undisputed facts submitted by the USA in support of its motion for summary judgment. Therefore, pursuant to Local Rule

402 N(3)(b) the following facts are deemed admitted:

1. The IRS was properly notified of Payne's Chapter 7 bankruptcy case. The IRS never filed a claim against Payne's estate nor did it file an adversary to determine the dischargeability of any of the income taxes owed by Payne.

2. Payne was paid $155,604.77 in wages by RBH of Illinois, Inc. in 1986, from which $44,520 in federal income taxes and $3,003.00 in social security taxes was withheld.

3. The USA gave Payne credit for the $44,520 withheld from his wages on or about April 15, 1987.

4. Payne failed to file a tax return for 1986 on or before the required due date of April 15, 1987.

5. On or about November 6, 1989, the IRS filed a substitute return for Payne pursuant to 26 U.S.C. § 6020(b). That substitute return showed no income for 1986. The IRS then began to investigate to determine the proper tax liability owed by Payne.

6. On or about December 31, 1990, a delegate of the Secretary of Treasury made an assessment for unpaid income tax in the amount of $64,472.00, plus penalties and interest.

7. The IRS has no record that Payne ever filed a tax return for the 1986 tax year.

8. Payne says that he mailed several years of late returns in March of 1992, including the 1986 return. Payne's 402 N Statement. The IRS has acknowledged receiving the other returns, but says it never received the 1986 return. If Payne did file the 1986 return in March of 1992, that was more than two years prior to filing of his Bankruptcy Petition on December 31, 1997.

### § 523 Exceptions to Discharge

Section 523 of the Code which enumerates exceptions to discharge provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

11 U.S.C. § 523(a)(1)(a)(A)-(C).

■ Exceptions to discharge are narrowly construed in favor of providing the debtor with a fresh start. *Goldberg Securities, Inc. v. Scarlata*, 979 F.2d 521, 524 (7th Cir.1992) (citation omitted). However, Congress has evinced an intent to balance this policy with recognition of the need to encourage voluntary compliance with applicable tax law. *Collier on Bankruptcy*, ¶ 507.10[1][b] (15th ed.2002). Thus, income tax debts have priority and are nondischargeable even if the taxing authority does not file a claim, unless the following criteria are met: (1) the debtor filed the required return and did not attempt to willfully avoid paying the tax (11 U.S.C. § 532(a)(1)(B)-(C)); (2) the taxes came due more than three-years prior to the debtor filing for bankruptcy, including

any extensions (11 U.S.C. § 523(a)(1)(A)); (3) the taxes were not assessed within 240 days of filing the bankruptcy, including extensions (11 U.S.C. § 523(a)(1)(A)); and (4) the required return was filed more than two years before the debtor filed for bankruptcy (11 U.S.C. § 523(a)(1)(B)(ii)).

### The USA's Argument against Discharge

The USA raises a twofold argument in support of its claim that Payne is ineligible for discharge of his 1986 tax because he failed to file the required return. First, the Internal Revenue Service has no record that the return was ever received by it. Secondly, even if Payne mailed a 1040 Form to the IRS when he says he did, that form does not constitute a valid return for purposes of § 523 because it was mailed after the IRS had already assessed the tax. Each of these arguments will be taken in turn.

### For Purpose of Considering the Motion for Summary Judgment, the IRS is Presumed to have Received Return

■ Payne has raised an unrebutted presumption for purpose of considering the motion for summary judgment that his 1986 tax return was received by the IRS along with his other returns for 1983–1991. His sworn affidavit states that he executed and mailed the 1986 return in 1992 along with his other returns. He attached a purported retained copy of the 1986 return. An unrebutted statement in an affidavit is sufficient to raise a presumption that Payne's return was delivered to the IRS. *See Godfrey*, 997 F.2d at 338. Particularly in light of the acknowledgment that other returns that were sent at the same time by Payne were received, the IRS's failure to locate the return in issue is insufficient to rebut for purposes of summary judgment a presumption that it was delivered. *Nimz*, 505 F.2d at 179 (failure of bankruptcy court clerk to locate proof of claims was insufficient to show claims were not received); *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1241 (11th Cir.2002) (same); *Sorrentino v. United States of America*, 199 F.Supp.2d 1068, 1077 (D.Co. 2002) (same involving missing tax return). It is at least possible on the present record that the 1986 return was received by the IRS, which acknowledges receiving the other returns, and was subsequently misplaced. The USA has not offered any evidence to show that this did not happen except proof that its search has not turned up the return in issue.

■ As argued by the Government, mailing is not filing. *United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916). To file a required document with a governmental agency, it must be delivered to and received by the proper government official. *Id.* Congress has elaborated on this requirement with enactment of 26 U.S.C. § 7502 [1] which allows a

---

1. Timely mailing treated as timely filing and paying

    (a) General Rule.—

    (1) Date of delivery.—If any return ... required to be made, ... on or before a prescribed date ... is, after such ... date, delivered by United States mail to the agency, ... or office with which such return, ... is required to be filed, ... the date of the United States postmark stamped on the cover in which such return ... is mailed shall be deemed to be the date of delivery....

    (2) Mailing requirements.—This subsection shall apply only if—

    (A) the postmark date falls within the prescribed period or on or before the prescribed date—

    (i) for the filing ... of the return ..., and

    ...

    (B) the return ... was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency ... or

postmark to establish the filing date of a tax return which is mailed before the tax filing deadline.

Under Section 7502, a document is deemed delivered on the date it is postmarked if the document was: (1) properly placed in the U.S. mail prior to the filing deadline; and (2) delivered to the IRS after the deadline. 26 U.S.C. § 7502(a)(1)-(2). Documents sent via registered mail or certified mail constitutes prima facie evidence of delivery, provided the taxpayer has a postmarked receipt showing that the document was mailed before the filing deadline. 26 U.S.C. § 7502(c)(1)-(2). The Government argues that § 7502 abrogated the common law mailbox rule whereunder properly mailing of a document raises a rebuttable presumption that it was received. *Matter of Nimz Transportation,* 505 F.2d 177, 178 (7th Cir.1974). Thus, it contends that Payne's inability to produce a registration showing that he mailed the return via certified or registered mail means that he cannot as a matter of law establish that the return was filed. See Reply Brief p. 3.

There is a split of authority on the issue of whether § 7502 abolished the mailbox rule applicable under earlier cited authority as to tax filings. *See Carroll v. Commissioner,* 71 F.3d 1228, 1232 (listing cases). The Eighth and Ninth Circuits have answered this question in the negative. *See Anderson v. United States,* 966 F.2d 487 (9th Cir.1992); *Estate of Wood v. Commissioner,* 909 F.2d 1155 (8th Cir.

1990). According to those opinions, if Congress had intended to abrogate the mailbox rule it would have said so expressly. *Estate of Wood,* 909 F.2d at 1160. *Wood* concluded that there is nothing in § 7502 which indicates an intent to abolish the mailbox rule. *Id.* Hence, absent a clear manifestation of a contrary intent, § 7502 should be construed in harmony with prior existing law and judicial construction. *Id.* Therefore, it was reasoned that § 7502 created a "safe harbor" which does not exclude the presumption of delivery under the common law mailbox rule. *Id.* at 1161.

Conversely, the Second and Sixth Circuits have held that § 7502 is the exclusive means of establishing delivery or timeliness of tax documents mailed to the IRS. *Miller v. United States,* 784 F.2d 728 (6th Cir.1986); *Deutsch v. Commissioner,* 599 F.2d 44 (2nd Cir.1979). However, neither opinion is persuasive. *See Carroll,* 71 F.3d at 1232 (expressing belief that it is time to revisit issue of whether § 7502 abolished mailbox rule). Both *Miller* and *Deutsch* held that a taxpayer must meet two conditions to qualify for the safe harbor under § 7502:(1) the return must be mailed within the prescribed period; and (2) the return must be received by the IRS. *Miller* and *Deutsch* stand for the proposition that § 7502 enumerates the *only* means through which the taxpayer can establish the presumption of delivery. This could lead to the absurd result that a taxpayer

---

office with which the return ... is required to be filed....

...

  (c) Registered and certified mailing.—

  (1) Registered mail.—For purposes of this section, if any such return ... is sent by United States registered mail—

  (A) such registration shall be prima facie evidence that the return ... was delivered to the agency ... or office to which addressed, and

  (B) the date of registration shall be deemed the postmark date.

  (2) Certified mail.—The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.

26 U.S.C. § 7502.

filing an untimely return, as here, would be barred from introducing any proof that the late return was mailed because the taxpayer could not satisfy the first element of § 7502 (filing of a timely return). The anomaly of reading the statute that way is illustrated by a taxpayer timely filing a return on the last day of the prescribed period by registered mail but the postmark was inadvertently set for the next day. The taxpayer could not offer a registered receipt with the correct date of mailing to establish the presumption that the return was received by the IRS. *See Miller*, 784 F.2d at 731 Fn. 4 (acknowledging the harsh and illogical result of strict application of § 7502). Clearly, Congress did not intend such a result when it enacted § 7502 to alleviate the inequities caused by disparate postal systems. *Miller*, 784 F.2d at 730 (§ 7502 is remedial statute).

Finally, nothing in § 7502 evinces a statutory holding that the IRS will never lose a filed tax return. Yet, that is the presumed result if one applies the reasoning of *Miller* and *Deutsch*. *See BMC Bankcorp, Inc. v. U.S. (unpublished opinion)*, 59 F.3d 170, 1995 WL 363387 (6th Cir. 1995) (panel constrained by *Miller* to reject claim that return was filed even though IRS acknowledged receiving two of three returns mailed by company).

There are no cases directly on point in this Circuit. *See L & H Company, Inc. v. U.S.*, 761 F.Supp. 572, 574 (N.D.Ill.1991) (expressing support for *Wood* in dicta). However, an opinion of this Circuit has applied the mailbox rule to overturn a decision granting summary judgment for the IRS. *Godfrey v. U.S.*, 997 F.2d 335, 338–40 (7th Cir.1993). In *Godfrey*, a couple sought $6,580.50 in interest payments from the IRS for delaying payment of a refund check. *Id.* at 336. The Government claimed that the plaintiff's were not entitled to any interest because it mailed a refund check to the couple within the

time allowed by statute. *Id.* However, the taxpayers claimed they never received the check. Eventually, the Government canceled the original check and issued a replacement check. *Id.* On appeal, the opinion stated that the Government was entitled to the presumption under the mailbox rule, but because the IRS failed to offer any evidence that the original check was ever mailed, it could not avail itself of the presumption. *Id.* at 338–40. Another Seventh Circuit opinion held that the IRS was not entitled to the presumption where it did not produce the return receipt for a deficiency notice which was alleged to have been sent by certified mail. *See McPartlin v. Commissioner*, 653 F.2d 1185, 1191 (7th Cir.1981).

As decided in *Wood, supra,* there is nothing in § 7502 which shows that Congress intended to abolish the general mailbox rule. Further, it would be an anomaly to allow the IRS to invoke the mailbox rule, but to refuse application of the same to taxpayers. This is particularly true in the bankruptcy context where the intent of Congress to discharge taxes where a return was filed is clear.

■ Finally, the IRS's argument under § 7502(c) is unfounded because the express language of the statute states that it only applies to documents that are filed before the required deadline and provides a "safe harbor" to allow debtors to file timely and avoid penalties for late filing. Here, Payne alleges that he filed his 1986 return in March of 1992, well after the April 15, 1987, deadline for filing his income tax return. Thus, the safe harbor provision of § 7502 is unavailable to Payne to avoid penalties. But the IRS is arguing for an unrebuttable presumption that Payne never filed his 1986 return and cannot get the tax debt discharged because he did not send it in by certified or registered mail. That position is not supported by the Bankruptcy Code or § 7502(c).

A motion for summary judgment must be denied where a genuine issue of fact is unresolved. Fed.R.Bankr.P. 7056(c). Thus, construing the facts here in the light most favorable to the nonmovant, a triable dispute is found over whether Payne filed his 1986 return in March of 1992.

*Payne's Return Satisfies § 523(a)(1)(B)*

■ Alternatively, the Government argues that the 1040 Form allegedly mailed by Payne could not qualify as a return even if received, and therefore any filing of it in March of 1992 should be treated as a nonevent for purposes of § 523(a)(1)(B). It relies on *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999), where the opinion held: "We conclude that if a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of tax law." *Id.* at 1035. The requirement that a purported return must represent an honest and reasonable attempt to comply with the tax code is drawn from cases which apply a four-part test to determine whether a document qualifies as a return: (1) the document must purport to be a return, (2) it must be executed under penalty of perjury, (3) it must contain sufficient data to allow computation of the tax, and (4) it must represent an honest and reasonable attempt to comply with tax law. This is the so-called "Beard test" which is derived from two earlier Supreme Court cases: *Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944); and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180, 55 S.Ct. 127, 79 L.Ed. 264 (1934). *See Beard v. Commissioner of Internal Revenue*, 82 T.C. 766, 775, 778, 1984 WL 15573 (1984).

The Sixth Circuit opinion in *Hindenlang* reasoned that a document purporting to be a return which is filed after an assessment has been made by the IRS has no tax purpose. *Hindenlang*, 164 F.3d at 1034–35. Hence, it reasoned that such documents are a nullity and therefore do not qualify as a tax return under § 523(a)(1)(B). *Id.* Applying that reasoning, the Government argues that its assessment on December 31, 1990, made it legally impossible for Payne to file a valid return in March of 1992.

Other authority has rejected the reasoning in *Hindenlang* which one BAP Panel says could lead to the absurd result that the IRS would be given a veto over the dischargeability of tax debts in bankruptcy. *See In re Savage*, 218 B.R. 126, 132 (10th Cir. BAP 1998) (noting that a debtor for whom the IRS prepared a tax return for purposes of assessment could never obtain a discharge of the tax debt). Another BAP Panel has stated that the view espoused in *Hindenlang* is unsupported by the plain language of § 523(a)(1)(B) and is contrary to the policy of narrowly interpreting exceptions to discharge. *See In re Nunez*, 232 B.R. 778, 783 (9th Cir. BAP 1999) (good faith-prong of "Beard test" should be narrowly construed to favor discharge). The Seventh Circuit has not spoken to this issue. However, Judge Squires of this Bankruptcy Court has adopted the reasoning of *Nunez* and *Savage* and refused to apply non-bankruptcy authorities to define what constitutes a meaningful return under § 523(a)(1)(B)(i). *See In re Crawley*, 244 B.R. 121 (Bankr.N.D.Ill. 2000).

Analysis in the latter opinions is more persuasive than that in *Hindenlang*. Obviously, the return filed by Payne met the first three prongs of the *Beard* test. Payne says that he executed the 1040 Form which he forwarded with intent that it serve as his 1986 tax form, and he now demonstrates *prima facie* a retained copy

showing that he provided sufficient data to compute the tax. The only issue is whether he satisfied the good-faith requirement of the fourth prong of *Beard.* However, the inquiry into Payne's good-faith should focus on his intent, not on the timing of the return's utility to the IRS. The fact that the return was mailed after the IRS had made an assessment in no way reflects on whether Payne had a good-faith intent to provide accurate information on his untimely filed return. Given that the Bankruptcy Code already contains a good-faith test in § 523(a)(1)(C), it is inappropriate to impose a different good-faith requirement under non-bankruptcy law through the fourth prong of the *Beard* test. As stated in *Nunez,* the good-faith test under *Beard* should be narrowly construed. *Nunez,* 232 B.R. at 783.

Analysis of "good faith" certainly must cover many issues, such as: whether a purported return is accurate and supported by documents; whether the IRS was hot on the trail of a debtor with collection efforts when a late return is filed[2]; and whether the explanation for late filing is adequate. Those issues remain to be tried.

Thus, on the current record it appears that Payne must be given the opportunity to show that his belated 1040 Form if filed could have qualified as a good faith tax return.

### CONCLUSION

For reasons discussed above, the United States has failed to show that there are no material issues for trial, and its motion for summary judgment will be denied by separate order.

2. See e.g. *In re Hatton,* 220 F.3d 1057, 1061   (9th Cir.2000).