**In re Gary Wayne COLSEN, Debtor.**

**Gary Wayne Colsen, Plaintiff,**

**v.**

**United States of America, Internal Revenue Service, Defendant.**

**Bankruptcy No. 03–00363M.**
**Adversary No. 03–9079M.**

United States Bankruptcy Court,
N.D. Iowa.

June 25, 2004.

Judith O'Donohoe, Charles City, IA, for Debtor.

Tax Attorney U.S. Department of Justice, Civil Trial Section, Central region, Tax Division, Washington, DC, for Defendant.

## ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the court is defendant's motion for summary judgment filed February 9, 2004. The United States asks the court to determine that plaintiff's income tax liability for tax years 1992–1996 is nondischargeable as a matter of law.

The court held a telephonic hearing on the matter March 30, 2004. Appearing for movant was Assistant United States Attorney Phyllis Jo Gervasio. Attorney Judith O'Donohoe represented plaintiff Gary Wayne Colsen. The parties have filed post-hearing briefs, and the court deems the matter fully submitted. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### Standard for Summary Judgment

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), incorporated by Fed.R.Bankr.P. 7056.

### Factual Background

Plaintiff Gary Wayne Colsen filed a Chapter 7 bankruptcy petition in this court on February 10, 2003 and received a general discharge of debts on May 28, 2003.

On May 15, 2003, Colsen commenced this adversary proceeding to determine the dischargeability of federal income tax liability for tax years 1992–1998. As grounds for the discharge of this debt, Colsen stated that tax returns for tax years 1992–1998 were filed more than three years before the date of the filing of his bankruptcy petition. Complaint, ¶ 5.

Colsen did not file timely tax returns for tax years 1992 through 1996. As authorized by 26 U.S.C. § 6020(b), the Internal Revenue Service ("IRS") prepared substitutes for returns ("SFRs") for those tax years. The SFRs for tax years 1992 through 1995 were prepared August 8, 1997. The SFR for tax year 1996 was prepared December 2, 1997. The IRS issued notices of deficiency on April 28, 1998 for tax years 1992 through 1995 and on February 11, 1999 for tax year 1996. The notices, also called "ninety-day letters," gave Colsen ninety days to file a petition with the United States Tax Court for a redetermination of the deficiency. See Doc. 10, United States Memorandum in Support of Motion, Exhibit B (Notice of Deficiency for tax years 1992 and 1993). The notices showed that Colsen owed the following amounts:

| Tax Year | Tax Deficiency |
| --- | --- |
| 1992 | 15,025 |
| 1993 | 28,867 |
| 1994 | 46,326 |
| 1995 | 48,602 |
| 1996 | 47,910 |

The notices also showed amounts added for penalties for failure to file timely returns, as authorized by 26 U.S.C. § 6651(a)(1), and for underpayment of estimated taxes, as authorized by 26 U.S.C. § 6654. Colsen did not file a petition with the Tax Court.

In November 1998, the IRS assessed the taxes, with interest and penalties, for tax years 1992 through 1995. Assessment was made for tax year 1996 on July 12, 1999.

In September and October 1999, Colsen filed Forms 1040 for each of the tax years 1992–1996. For tax year 1992, Colsen reported a refund due in the amount of $506.

For the remaining years, he reported tax owing in the following amounts: 1993, $1,910; 1994, $9,305; 1995, $7,989; 1996, $7,894.

The IRS examined each of the Forms 1040 as an audit reconsideration. On June 12, 2000, the IRS abated the assessments as follows:

| Tax Year | Tax Abated | Interest Abated |
| --- | --- | --- |
| 1992 | 11,754 | 8,103.83 |
| 1993 | 13,660 | 4,507.28 |
| 1994 | 14,771 | - |
| 1995 | 17,234 | - |
| 1996 | 16,583 | 4,404.07 |

On February 7, 2000, prior to the abatement in June, the IRS abated $17,284 of tax and $2,095.64 of interest of the amount originally assessed for tax year 1996.

The United States admits that Colsen filed tax returns for tax years 1997 and 1998 and that it has made assessments against Colsen for tax, interest and penalties for those years. Answer, ¶ 3f-k. The United States admits that Colsen's tax liability for tax years 1997 and 1998 is dischargeable. *Id.*, ¶ 5. It denies that Colsen filed tax returns for tax years 1992–1996. *Id.*, ¶ 3a-e.

### Discussion

■ The government's position is that the debt for the 1992–1996 tax years is nondischargeable pursuant to Bankruptcy Code § 523(a)(1)(B) for Colsen's failure to file "returns" within the meaning of the statute. The creditor bears the burden of proof by a preponderance of the evidence that debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This is so even when the debtor is the plaintiff in the complaint to determine dischargeability. *Langlois v. United States*, 155 B.R. 818, 820 (N.D.N.Y. 1993); *Dube v. United States (In re Dube)*, 169 B.R. 886, 891 n. 5 (Bankr.N.D.Ill.1994). The burden of proof in this action is on the United States.

■ The statutory exceptions to discharge are to be narrowly construed. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993); *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir.1988).

Bankruptcy Code § 523(a)(1) provides that a Chapter 7 discharge does not discharge a debtor from any debt for a tax—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1).

■ Colsen filed Forms 1040 for each of the tax years at issue. The United States does not claim that the tax forms were irregular in any respect or that Colsen failed to supply the information required by the forms. Nor does the United States claim that Colsen has made a fraudulent return or has attempted to evade his tax liability with respect to any of the subject tax years. The IRS accepted the forms and, on the basis of the information reported on the forms, abated taxes and interest assessed against Colsen. The critical fact, the government argues, is that the Forms 1040 for 1992–1996 were filed after the IRS had assessed Colsen's tax liability for those years. The government contends that a Form 1040 filed after assessment has no tax consequence and, therefore,

cannot be a return within the meaning of § 523(a)(1)(B).

The United States urges the court to follow a line of cases adopting the analysis of *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029 (6th Cir. 1999). In *Hindenlang,* the debtor did not file timely income tax returns for tax years 1985, 1986, 1987 and 1988. In 1990, the IRS sent the debtor proposed deficiency letters, known as "thirty-day letters." It later prepared SFRs and sent formal deficiency letters to the debtor. The IRS assessed the taxes in 1991. In 1993, the debtor filed Forms 1040 reporting essentially the same taxes owing as calculated by the IRS. He did not pay the taxes. In 1996, the debtor filed a Chapter 7 bankruptcy petition and commenced an adversary proceeding to determine the dischargeability of his federal income tax obligations. On cross-motions for summary judgment, the bankruptcy court ruled in the debtor's favor and the district court affirmed. *In re Hindenlang,* 214 B.R. 847 (S.D.Ohio 1997). The government appealed.

The Sixth Circuit framed the issue as "whether Forms 1040 filed after the IRS has made an assessment can constitute returns for purposes of § 523(a)(1)(B)." *Hindenlang,* 164 F.3d at 1032. Finding no formal definition of the term "return" in either the Bankruptcy Code or the Tax Code, the court adopted the four-part "*Beard* test" as the applicable test of whether a document qualifies as a return. *Id.* at 1034. The *Beard* test was derived from two Supreme Court cases, *Germantown Trust Co. v. Commissioner of Inter-*

*nal Revenue,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), and is so called because the four prongs of the test were first combined in *Beard v. Commissioner of Internal Revenue,* 82 T.C. 766, 1984 WL 15573 (1984). "In order for a document to qualify as a return: (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." *Hindenlang,* 164 F.3d at 1033 (quoting the district court's decision, 214 B.R. at 848). The deciding issue in *Hindenlang* was whether the forms represented "an honest and reasonable attempt to satisfy the requirements of the tax law." *Hindenlang,* 164 F.3d at 1034.

The Sixth Circuit concluded that "when the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by the IRS, and the government has assessed the deficiency, then the [debtor's] Forms 1040 serve no tax purpose, and the government thereby has met its burden of showing that the debtor's actions were not an honest and reasonable effort to satisfy the tax law." *Id.* at 1034–35. The court held as a matter of law that the debtor's forms were not returns within the meaning of § 523(a)(1)(B).

The case of *United States v. Nunez (In re Nunez),* 232 B.R. 778 (9th Cir. BAP 1999),[1] represents a second line of cases dealing with the issue. In *In re Nunez,*

---

**1.** The Fourth Circuit in *Moroney v. United States (In re Moroney),* 352 F.3d 902, 906 n. 2 (4th Cir.2003), stated it was uncertain whether *In re Nunez* was implicitly overruled by *United States v. Hatton (In re Hatton),* 220 F.3d 1057 (9th Cir.2000). In *Rushing v. United States (In re Rushing),* 273 B.R. 223, 227

(Bankr.D.Ariz.2001), the court concluded that the Ninth Circuit in *In re Hatton* did not adopt the "Hindenlang Rule." *See also Payne v. United States (In re Payne),* 306 B.R. 230, 236 n. 3 (Bankr.N.D.Ill.2004) (distinguishing *In re Hatton* from *In re Nunez* ).

the debtor failed to file timely federal income tax returns for tax years 1985, 1986, 1987, and 1989. The IRS prepared SFRs for these tax years. By April 1993, the IRS had assessed the taxes owing, based on its own calculations. In 1994, the debtor filed Forms 1040 for the tax years at issue, reporting the same income as calculated by the IRS. In 1997, debtor filed a Chapter 7 bankruptcy petition and filed a complaint to determine the dischargeability of his income tax debt.

The United States argued in *Nunez* that a Form 1040 filed post-assessment cannot qualify as a return, because it does not serve the purpose of providing the information necessary to calculate the tax. The court rejected this argument as reading into § 523(a)(1)(B) a requirement that is not in the text of the statute. Congress did not condition the discharge of tax debt on whether a return was filed prior to assessment. *In re Nunez*, 232 B.R. at 781–82.

The government argued alternatively that the debtor's Forms 1040 did not represent an honest and reasonable attempt to comply with the tax laws, and thus did not meet the fourth prong of the *Beard* test. The court concluded, however, that good faith in the context of the *Beard* test should be construed narrowly. The question is whether the tax form appears "on its face to constitute an honest and genuine endeavor to satisfy the law." *Id.* at 783 (citing *Savage v. Internal Revenue Service (In re Savage)*, 218 B.R. 126 (10th Cir. BAP 1998)).

The United States alleged in *In re Nunez* that the debtor had filed a bankruptcy petition solely to avoid paying his tax liability. It argued that certain facts, including the number of years the debtor had failed to file a timely return, were indicia of bad faith. The essence of the government's claim was that the debtor had attempted to evade his taxes. *In re Nunez*, 232 B.R. at 783. As such, the government's focus was relevant to § 523(a)(1)(C). Because the United States had not raised § 523(a)(1)(C) as a basis for nondischargeability, the court granted the debtor's motion for summary judgment. *Id.*

This court recognizes that perhaps the weight of bankruptcy authority views the debtor's course of conduct as relevant to whether the debtor has filed a tax return for purposes of § 523(a)(1)(B). *See, e.g., Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905–06 (4th Cir.2003); *United States v. Woods*, 2004 WL 882057 at \* 2 (S.D.Ind.2004). Nevertheless, the line of cases rejecting the *Hindenlang* analysis retains vitality. *See, e.g., Payne v. United States (In re Payne)*, 283 B.R. 719, 726 (Bankr.N.D.Ill.2002) (denying government's motion for summary judgment); 306 B.R. 230, 236–37 (Bankr.N.D.Ill.2004) (deciding in favor of debtor after trial). The Eighth Circuit has not ruled on the issue. The court believes from its own research and from the parties' briefs that the *Hindenlang* line of cases does not represent binding precedent in this district. Moreover, the court is not persuaded by this line of cases. The *Hindenlang* decision represents a departure from the principles of statutory construction long held applicable in dischargeability proceedings.

■ The court's analysis of § 523(a)(1)(B) must begin "with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the "statute's language is plain, the sole function of the courts is to enforce it according to its terms.... The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will pro-

duce a result demonstrably at odds with the intention of its drafters." *Id.*, 109 S.Ct. at 1030–31. A focus on the text of the Bankruptcy Code has been the hallmark of Supreme Court bankruptcy jurisprudence for more than a decade. *See Walsh v. United States (In re Walsh)*, 260 B.R. 142, 147 & n. 5 (Bankr.D.Minn.2001) (collecting cases), *aff'd*, 2002 WL 1058073 (D.Minn.2002).

■ The court finds no reason to believe this to be the "rare case" that would allow the court to depart from the text of the statute. The word "return" is an unambiguous term in common usage. A return is "a formal statement on a required legal form showing taxable income, allowable deductions and exemptions and the computation of the tax due." *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060 (9th Cir.2000) (quoting Webster's Ninth New Collegiate Dictionary (1985)); *see also* Black's Law Dictionary (8th ed.2004) ("tax return" is an "income-tax form on which a person reports income, deductions, and exemptions, and on which tax liability is calculated").

The *Hindenlang* analysis has been criticized as ignoring the plain language of § 523(a)(1)(B). *Crawley v. United States (In re Crawley)*, 244 B.R. 121, 126 (Bankr. N.D.Ill.2000); *see also In re Savage*, 218 B.R. at 132; *In re Payne*, 306 B.R. at 236–37. The courts in the *Hindenlang* line of cases rely on policy-based arguments for rejecting a "plain meaning" analysis, emphasizing the need for the law to support the voluntary federal income tax system. *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 906 (4th Cir.2003); *In re Hindenlang*, 164 F.3d at 1033; *In re Walsh*, 260 B.R. at 148. This court disagrees that departure from the text of the statute is justified.

The drafters of the 1978 Bankruptcy Code recognized a tension between three constituencies: (1) taxing authorities, who must be given a reasonable time to collect taxes, (2) general unsecured creditors, who compete with the taxing authorities for distributions from the estate, and (3) the debtor, whose "fresh start" should not be burdened with an excessive accumulation of past-due taxes. *Waugh v. Internal Revenue Service (In re Waugh)*, 109 F.3d 489, 492 (8th Cir.1997) (citing S.Rep. No. 95–989, at 14 (1977), U.S.Code cong. & Admin.News 1978, 5787, 5800). Congress chose to balance the interests of these three constituencies in the manner in which it enacted Bankruptcy Code § 507 and § 523(a)(1). As a result, income tax liabilities have priority and are nondischargeable to the extent provided in detail by the formulations of those statutes. *In re Payne*, 283 B.R. at 721–22. Bankruptcy courts may not disregard the text of § 523(a)(1)(B) merely because they believe Congress did not adequately protect the interests of taxing authorities. *See Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984)("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

■ Congress contemplated that late-filing of tax returns would not be sufficient in itself to bar dischargeability of tax debts. 11 U.S.C. § 523(a)(1)(B)(ii). Filing a tax return prior to assessment is not made a condition of dischargeability. *In re Nunez*, 232 B.R. at 781–82; *In re Savage*, 218 B.R. at 132; *In re Payne*, 306 B.R. at 236–37; *In re Crawley*, 244 B.R. at 126–27.

■ The word "return" is unambiguous. There should be little need for a technical definition. However, the term should be construed under bankruptcy law in a manner consistent with tax law. Be-

cause a tax return is a creature of statute, the Tax Code should be the primary source of guidance as to the requirements for a return under tax law and, thus, the meaning of the term under bankruptcy law. *See Mathis v. United States (In re Mathis),* 249 B.R. 324, 327 (S.D.Fla.2000) (examining requirements of return under Tax Code § 6020(a)).

Although neither the Bankruptcy Code nor the Tax Code provide a formal definition of the term "return," the general requirements of an individual federal income tax return are found in Tax Code § 6011(a). *Beard v. Commissioner of Internal Revenue,* 82 T.C. 766, 774, 1984 WL 15573 (Tax Ct.1984). That statute provides:

> When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations.

26 U.S.C. § 6011(a). The implementing regulations require a taxpayer to make the return according to the prescribed forms and to include the information required by those forms. 26 C.F.R. § 1.6011–1. Tax returns must be signed under penalty of perjury. 26 U.S.C. § 6065. Tax Code § 6012(a)(1) defines when an income tax return is required. "Every individual having for the taxable year gross income which equals or exceeds the exemption amount" shall make a return. 26 U.S.C. § 6012(a)(1)(A).

In most cases, there will be no question as to whether a debtor has filed the appropriate form and provided the information required by the form. The case of *Beard*

*v. Commissioner* is an example of when the issue arises under tax law. The taxpayer in *Beard* had deleted several captions on a Form 1040 and replaced them with his own language. The court could not determine whether the form contained sufficient information to calculate the tax liability. *Beard,* 82 T.C. at 779. Moreover, the tampered form reflected a "conspicuous protest against the payment of tax." It was not a return in conformity with the requirements of Tax Code § 6011(a). *Id.*

The issue of whether a return has been filed may arise when the taxpayer has altered the prescribed tax form, as in *Beard,* or has failed to verify the tax form, or has failed to provide enough information to calculate the tax. *See Ledbetter v. Commissioner of Internal Revenue,* 837 F.2d 708 (5th Cir.1988) (taxpayers obliterated "penalty of perjury" language on form); *Hess v. United States,* 785 F.Supp. 137, 139 (E.D.Wash.1991) (taxpayer claimed no earned income and failed to identify source of income, although substantial tax had been withheld). The issue may also arise when the question is whether a filed tax form was adequate to trigger a statute of limitations. *See Germantown Trust Co. v. Commissioner of Internal Revenue,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) (taxpayer filed fiduciary return, rather than corporate return, in good faith); *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934) (return filed by taxpayer triggered statute of limitations even though return required amendment).

The tax question, at bottom, is whether the taxpayer sufficiently complied with the requirements of § 6011 to file the prescribed form and to provide the information required by the form. "Substantial compliance" is generally thought to be sufficient. *In re Hindenlang,* 164 F.3d at

1033 (citing Bittker & McMahon, Federal Income Taxation of Individuals § 40.1 (1988)). When the *Beard* test is applicable, the intent prong of the test requires only a limited inquiry as to the completeness and accuracy of the filed tax form.

In *Walsh v. United States (In re Walsh)*, 260 B.R. 142, 149 (Bankr.D.Minn. 2001), the court believed the result in *Hindenlang* was correct but recognized the limitations of the *Beard* test. Facts similar to those in the *Beard* case will not often arise in a dischargeability proceeding. Most tax returns are filed using the correct form and supplying the required information. *See In re Walsh*, 260 B.R. at 150. The court in *Walsh* avoided the *Beard* test by focusing on another word in § 523(a)(1)(B), "required." The court concluded that once the IRS has assessed tax liability, a return is no longer required. *Id.* at 150–51. This court disagrees. Whether a return is "required" should be construed in accordance with the Tax Code. *See* 26 U.S.C. § 6012(a)(1)(A) ("every individual having for the taxable year gross income which equals or exceeds the exemption amount" shall make a return).

The *Hindenlang* analysis is inconsistent with the principle of statutory construction that the exceptions to discharge are to be construed narrowly. *In re Crawley*, 244 B.R. at 127. The Sixth Circuit expanded § 523(a)(1)(B) by its misapplication of the *Beard* test. It views the intent element, whether the return represents an honest and reasonable attempt to satisfy the requirements of the tax law, as permitting a broad inquiry into the entire course of conduct of the debtor. As demonstrated by the *Beard* case itself, the test is a narrow inquiry to determine whether the taxpayer has complied with Tax Code § 6011(a).

Congress provided for nondischargeability on the basis of bad intent in § 523(a)(1)(C). *In re Payne*, 283 B.R. at 726; *In re Nunez*, 232 B.R. at 783. "[I]t is inappropriate to impose a different good-faith requirement under non-bankruptcy law through the fourth prong of the *Beard* test." *In re Payne*, 283 B.R. at 726. The *Nunez* line of cases more appropriately views the intent element as a question of the debtor's intent at the time of filing the tax form, as evidenced on the face of the document itself. *See, e.g., In re Nunez*, 232 B.R. at 783.

The *Hindenlang* analysis further expands § 523(a)(1)(B) in favor of the government by finding that a Form 1040 filed post-petition serves no tax purpose. *Hindenlang*, 164 F.3d at 1034–35. In *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 906 (4th Cir.2003), the debtor pointed out that his post-assessment returns had the tax purpose of establishing the tax liability, because the IRS accepted the returns and abated tax. The Fourth Circuit viewed this as irrelevant, because the inquiry is whether the debtor "made an honest and reasonable effort to comply with the tax laws." *Id.; cf., Izzo v. United States (In re Izzo)*, 287 B.R. 158, 162 (Bankr.E.D.Mich.2002) (IRS acceptance of returns and reduction of tax established that IRS considered them honest and reasonable attempt to comply with law). The "tax purpose prong" added by *Hindenlang* has created a per se timing rule under § 523(a)(1)(B) that shifts the burden of proof to the debtor.

Decisions following the *Hindenlang* approach assume that a tax form at some point will no longer qualify as a return because it is untimely. *See In re Hindenlang*, 164 F.3d at 1033. Under tax law, sufficiency of a return, timeliness, and bad intent are separate notions. The Tax Code contemplates that an untimely return may have been filed late due to reasonable cause, willful neglect, or fraud. *See* 26

U.S.C. § 6651(a)(1) (requiring penalties for late-filed returns); 26 U.S.C. § 6651(f) (requiring increased penalties for fraudulent failure to file). A late-filed return becomes subject to penalties and interest. It does not, however, cease to be a return. In *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984), the taxpayers' fraudulent intent did not make the return a nullity for all purposes. The returns, although fraudulent, "appeared on their faces to constitute endeavors to satisfy the law." *Id.,* 464 U.S. at 397, 104 S.Ct. at 764. *See also Hess v. United States,* 785 F.Supp. at 138–39 ("If a purported return contains financial data, even untrue financial data, which would allow for a computation of tax, the document is a return. . . . The return may be frivolous. It may be false. It may be fraudulent. But it is a return nonetheless.")

This court believes that the *Hindenlang* reading of § 523(a)(1)(B) would lead to an absurd result. By reading into the statute a requirement that is not in the text, the *Hindenlang* line of cases would find tax liabilities nondischargeable regardless of their age and regardless of the debtor's subjective intent when the tax returns were filed. *In re Nunez,* 232 B.R. at 781; *In re Savage,* 218 B.R. at 132; *In re Payne,* 283 B.R. at 725; *In re Crawley,* 244 B.R. at 127.

The parties agree that Colsen filed Forms 1040 that were regular in form and that supplied the information requested by the forms. The IRS accepted them, examined each of them as an audit reconsideration, and abated taxes and interest on the basis of the information provided in the filed documents. The government's objection is based solely on the timing of the filing of the tax forms. Thus, the court finds as a matter of law that Colsen filed returns for the subject years within the meaning of § 523(a)(1)(B). Because the government has identified no other basis for denying dischargeability of the tax liability, the court concludes that judgment should enter for Colsen.

IT IS ORDERED that the motion for summary judgment filed by the United States is denied.

IT IS FURTHER ORDERED that the income tax liability of plaintiff Gary Wayne Colsen owed to the United States for tax years 1992, 1993, 1994, 1995 and 1996 is discharged.